1
2
3
4
5
6
7

8                    **IN THE UNITED STATES DISTRICT COURT**

9               **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   UNITED STATES OF AMERICA,          No. CR S–02-0151-MCE-CMK
                                             CIV S-07-0247-MCE-CMK
12                    Respondent,

13          vs.                            FINDINGS AND RECOMMENDATIONS

14   SCOTT MICHAEL VOGELSANG,

15                    Movant.

16   _____/

17          Movant, a federal prisoner proceeding pro se, brings this motion to correct or set

18   aside a criminal judgment pursuant to 28 U.S.C. § 2255 (Doc. 194).  Movant submitted a

19   separate memorandum in support of his motion (Doc. 241, filed under seal).[1]   Movant has also

20   submitted other documents apparently in support of his motion (See Docs. 212, 213, 228).

21   Further, movant seeks leave to conduct formal discovery (Doc. 195).  Respondent has filed an

22   opposition to the underlying § 2255 motion as well as the request for leave to conduct discovery

23   (Doc. 223), and movant has filed a reply (Doc. 229).[2]

24
     _____
25          [1]     Movant requested that his memorandum in support of his § 2255 motion be filed
     under seal (See Docs. 202, 207, and 239).  By separate order, that request was granted.
26          [2]     This document is also filed under seal pursuant to separate court order.

1

# I. BACKGROUND

A.   **Facts**

In its opposition, respondent sets forth the factual background for this case, which the court finds to be accurate based on the record.  Specifically, respondent outlines the following general facts:

Medicare is the federal health insurance program for people who are over 65, disabled, or have end-stage renal disease. R.T. 126:2-4.  Part A of the program, not relevant here, covers inpatient hospital care, skilled nursing care, and some home health and hospice care.  R.T. 126:8-11.  Part B is a supplemental insurance program that covers outpatient services including durable medical equipment ("DME").  R.T. 126:11-15.  Wheelchairs and motorized scooters are considered DME.  R.T. 126:25-127:3.  Medicare pays only 80% of the allowed cost of DME with the beneficiary being responsible for the remaining 20%.  R.T. 127:6-11.

Medicaid is a different federal health insurance program for people with low incomes.  R.T. 127:13-15.  Medi-Cal is the Medicaid program for California.  R.T. 127:13-15.  It is administered jointly by the federal government and the State of California.  R.T. 149:11-13.  If a patient is eligible for Medi-Cal, it pays the 20% patient portion that Medicare does not pay.  R.T. 127:16-20.

Becoming a provider is voluntary and a business can stop being a Medicare or Medi-Cal provider at any time.  R.T. 211:15-217:7.  Both Medicare and Medi-Cal give each provider an instruction manual, periodic notices of changes in their rules, and access to telephone services they can call to get any questions answered.  R.T. 137:19-139:6; 212-213.  Petitioner's company, Specs Rehab, Inc. ("Specs"), was a Medicare and Medi-Cal provider.  R.T. 139, 213-214.  As a provider, it was supposed to submit Medi-Cal claims to EDS, a company that processed claims for Medi-Cal.  R.T. 214:19-24.

Medicare patients cannot simply ask for an item like a wheelchair.  R.T. 128:4-10.  A physician must first certify that the equipment the patient wants is reasonable and necessary as part of a plan of treatment.  R.T. 128:12-17.  Once the patient gets this prescription, she can take it to a DME supplier like Specs.  The supplier is required to do an insurance check to find out who is primarily responsible for payment.  R.T. 129:8-14.  If Medicare is the primary payer, the supplier bills Medicare which pays the supplier 80% of the charges that Medicare considers reasonable for the equipment.  R.T. 129:8-18.  When Medicare pays a claim for a Medi-Cal beneficiary, it automatically sends a "crossover" bill to Medi-Cal for the remaining 20%.  R.T. 215:17-21.

If Medicare denies payment, the supplier can bill Medi-Cal for the entire 100% of the cost, up to the Medi-Cal maximum.  R.T. 129:25-130:2; 215:22-25.  In this situation, a Medi-Cal supplier like the petitioner must first get an Explanation of Medicare Benefits ("EOMB") from Medicare showing that it is denying the claims.  R.T. 216:1-4.  He then sends this to Medi-Cal to show that Medicare will not pay the bill.  R.T.

2

216:1-19.  Medi-Cal will then pay the complete 100% if it is an item that Medi-Cal covers.  R.T. 215:22-25.  Medi-Cal is a payer of last resort and so should only be billed if all other available sources of insurance have been exhausted, including Medicare.  R.T. 130:3-7.

Sometimes Medicare will reconsider a payment denial and agree to pay its 80% after Medi-Cal has already paid 100% of the claims.  In this situation, the provider has been paid twice and is required to return the overpayment to Medi-Cal.  R.T. 130:11-16; 235:10-236:8.  The provider can either return the original Medi-Cal check or send Medi-Cal a new check.  R.T. 236:3-8.  The provider can also simply send Medi-Cal a Claim Inquiry Form ("CIF") explaining that it has received an overpayment.  R.T. 235:25-236:5.  Medi-Cal will then deduct the overpayment from its payment to the provider.  R.T. 236:20-237:2.  If necessary, Medi-Cal can withhold money to correct an overpayment even if it learns . . . of it independently and the provider never notifies Medi-Cal.  R.T. 237:3-18.

As to the crimes in this case, respondent states that movant "took advantage of the potential for overpayments inherent in the system to commit fraud."  Respondent states this fraud took two forms: "scooter swaps" and "double billing."

1.   Scooter Swaps

As to the scooter swaps, movant fraudulently substituted motorized scooters for power wheelchairs.  A power wheelchair is only available for patients who need wheelchairs but do not have sufficient upper-body strength to operate one with their arms.  If a patient does not have enough upper-body strength to operate a regular wheelchair, but does have enough strength to sit upright and maintain stability, a motorized scooter can be used instead.  Only certain specialists can prescribe scooters instead of power wheelchairs.  A DME provider cannot make the decision to substitute one for the other.  Further, if the DME provider does make such a substitution, and the substituted item delivered by the provider later needs repairs, neither Medicare nor Medi-Cal will pay because the original prescription did not allow for that item.

Respondent states this system is ripe for fraud because scooters cost far less than power wheelchairs.  For example, a DME provider could convince a patient with a power wheelchair prescription that a scooter would serve their needs just as well, even though a specialist had not made that determination.  The provider could then submit a claim for the cost

of a power wheelchair, deliver the scooter, and pocket the difference with nobody knowing.  This is the fraud committed by movant.

2.    Double Billing

Respondent states that movant engaged in two forms of double billing fraud.  In the first method, movant would submit a claim for 80% to Medicare knowing that it would be denied because he intentionally included errors on the form.  When it was denied, he would then send a claim for 100% to Medi-Cal based on the Medicare denial.  At the same time, he would appeal the Medicare denial by correcting his original errors.  In the meantime, he would receive the 100% payment from Medi-Cal.  After the Medicare appeal was granted, he would then submit 80%/20% bills to Medicare and Medi-Cal in the normal course, resulting in double payment for the same item.  In the second method of double billing fraud, movant would submit a proper 80%/20% claim to both Medicare and Medi-Cal and be paid.  He would then submit a 100% claim to Medi-Cal as if the Medicare claim had been denied.

**B.    Procedural History**

Movant was charged in a 23-count second superseding felony indictment filed with 22 counts of health care fraud and one count of witness tampering.  Movant was found guilty following a jury trial on all counts except the witness tampering count and was sentenced to concurrent 33-month sentences on each count, plus $168,577.84 in restitution and a penalty assessment of $2,200.00.  In an unpublished memorandum disposition, the Ninth Circuit Court of Appeals affirmed the conviction and sentence.  The Ninth Circuit's decision, in its entirety, is as follows:

> Scott Vogelsang appeals his conviction on 22 counts of health care fraud in violation of 18 U.S.C. § 1347.  He challenges the conviction on the ground that the district court abused its discretion in excluding testimony that Vogelsang characterized as evidence of third party culpability.  The district court excluded the evidence for lack of sufficient probative value, and we agree.  The evidence dealt with misconduct on the part of a supervisor in the claims processing office, but with respect to the handling of claims other than those submitted by Vogelsang.  It is not evidence even suggesting that the supervisor could be guilty of the crimes

4

with which Vogelsang was charged.

Vogelsang also challenges his sentence on the ground that the district court should have conducted an evidentiary hearing to determine the amount of loss caused by the fraud.  The government introduced testimony calculating the amounts that Vogelsang had double billed.  Vogelsang did not submit or proffer any evidence that the loss should be calculated differently.  The amount was not reasonably in dispute so as to give rise to the need for any evidentiary hearing.  See U.S.S.G. § 6A1.3(a).

AFFIRMED.


## II. DISCUSSION

Movant argues that relief is warranted due to a number of alleged errors which occurred during the trial, as well as ineffective assistance of counsel.  It is somewhat difficult to discern exactly what movant is claiming.  In his initial § 2255 motion (Doc. 194), movant lists four separate claims, as follows:

Ground One – Ineffective Assistance of Counsel, Pre Trial

Counsel was held in Contempt of Court which biased counsel's ability to present the case properly.  Combined with the judge's rulings, counsel's angry reaction to rulings, and the visible manifestation of the critical deterioration in the lawyer's relationship with the judge resulted in a fragmented and disjointed defense.  Counsel failed to obtain Medi-Cal RAD's that showed adjustments and what proper payments should have been, failed to obtain Medicare documents, failed to retain expert witnesses in Medicare and Medi-Cal dually eligible reimbursement issues.  Doing so, after saying "ready for trial" would have further delayed proceedings and counsel would have been held in contempt again and this time it would have stuck.

Ground Two – Ineffective Assistance of Counsel, At Trial

Counsel erred in failing to notice that the prosecution's exhibits had been tampered with on several occasions and failed to obtain certification of custody of exhibits.  Counsel failed to research alleged "60-Day" law under Title 42 Subpart-D, that was misquoted with the intent to change the meaning of the law, failed to create a Time Line of events compared to alleged dates of events by prosecution's witnesses whom would have been impeached by a Time Line chart had one been created, and failed to present or attack false evidence presented in prosecution exhibit 11 "summaries" and a plethora of other false hearsay evidence presented by the prosecution's witnesses.

/ / /

Ground Three – Ineffective Assistance of Counsel, Simple Error

Failed to even consider a valid defense theory.  "Mistakes" theory conflicts with tampered and altered evidence regardless of its origin. Counsel refused to investigate other defense theories; failed to obtain or explain accomplice instructions for Zine and Bennett and failed to subpoena Martha Edwards who was a Grand Jury witness who was embezzling and had filed bankruptcy fraudulently before trial.

Ground Four – Due Process Violation, Prosecutorial Misconduct

Conviction obtained by unconstitutional failure of prosecution to disclose to the defendant evidence favorable to the defendant and presented tampered evidence and false testimony in order to obtain a conviction.  Multiple different versions of prosecution exhibits 5, 6, and 11 were presented to the defense and the source of those exhibits had been misrepresented pre-trial.  Title 42, Subpart-D, was misquoted as was the Medicare provider manual and numerous Medicare rules and regulations. The net effect changes the intent of Medicare and Medicaid law. Prosecution could have and should have known laws he was presenting were false.  Prosecution withheld Medicare and Medi-Cal payment record and claims – all which would have shown the alleged scheme's WAYS AND MEANS were not illegal, but in fact required under federal law.  The prosecution either suborned perjury or went to trial with false facts and failed to research the laws and regulations and therefore prosecuted on false testimony and evidence.  Some exculpatory evidence was released by the prosecution, or his agent(s), post trial.

In his § 2255 motion, movant also states that there was "lack of jurisdiction for counts 1-22."

After he filed his § 2255 motion, movant submitted documents entitled:  "Claim for Relief and Dismissal of Count 23 on Grounds of Double-Jeopardy" (Doc. 212) and "Claim for Relief and Motion to Vacate Counts 1 and 3-22 For Lack of Jurisdiction" (Doc. 213).  He also submitted a traverse (Doc. 229).  In the first document, movant argues:

The movant addressed the issue of billing for services rendered for the repair of a scooter which was subsequently billed to Medicare. Medicare did not pay for the original purchase of said scooter.  The government at trial alleged that the billing of said repair was fraud and obtained a conviction baised [sic] on false statements of government witnesses at trial.  The government has yet to produce law, rules or regulations supporting their claim of fraud.  Federal law states that billing is mandatory and a misdemeanor if not billed.  (emphasis in original).  Count 23 cannot be both a crime to bill and a crime to not bill at the same time.

ENTITLEMENT TO RELIEF

In part 12-D [Ground Four] of the movant's motion . . . for Vacating of Sentence the movant addressed the specific misconduct of the prosecution in suborning perjury and falsely quoting the law.  This is, in part, in regards to billing Medicare for medical equipment repairs where the equipment was not purchased by Medicare.  Billing Medicare for any health care related service is covered by 42 C.F.R. § 405.207, the Social Security Act . . ., the Medicare Carrier Manual . . ., and the Medicare Provider Manual published by CIGNA Medicare, the carrier with the authority to determine what payments, if any, should be for services.

The movant and defendant addressed this in greater detail in his affidavit in support of his § 2255 motion and is further supported by the affidavit & memorandum Exhibit G.[3]

The government's indictment item "H" has no basis in law, rule, or regulation.  This is clear misconduct by the former prosecutor.

In the second document, movant states:

FALSE GROUNDS FOR JURISDICTION

These counts for which the federal government's attorney alleged fraud for alleged "double-billing and receiving double payment" is not within the jurisdiction of the federal courts.  The government unlawfully assumed grounds for jurisdiction. . . .

ENTITLED TO RELIEF

In part 12-d [Ground Four] of movant's motion . . . the movant addressed the specific misconduct of the prosecution in suborning perjury and falsely quoting the law.

The movant and defendant addressed this in greater detail in his affidavit in support of his § 2255 motion and is further supported by the affidavit & memorandum's Exhibits D, E, X and others.

The government's indictment items "II THE SCHEME" and "A" have no basis in law, rule or regulation.  This is further misconduct by the former prosecutor. . . .

In his traverse, movant argues prosecutorial misconduct and ineffective assistance of counsel consistent with his prior submissions.  He also, for the first time, alleges various instances of trial court error.  Movant outlines the following categories of claims in his traverse:

Prosecutorial Misconduct
- Misrepresentation of Regulations
- Conclusions of Law
- Allowables and Payments
- Exhibit Errors and Forgeries
- Suborned Perjury
- Closing Argument

---

[3]     Movant apparently refers to the memorandum filed in support of his § 2255 motion, and documents attached thereto (Doc. 241, filed under seal).

1    - Obstruction of Discovery

2    Trial Errors
     - Administrative Remedies Required but Denied
3    - Explanation Withheld from Jury
     - Ashley Gun Factor
4    - Jean Stone was not an Expert
     - Misstatements of Law
5    - Conflicting Testimony and Procedural Errors

6    Ineffective Assistance of Counsel
     - Conflict of Interest
7    - Failed Investigation and Discovery
     - Failed Alibi Defense
8    - Failure to Enter Evidence
     - Failure to Attack Government Evidence
9    - Failure to Know Regulations and Challenge Government Errors
     - Failure to Challenge Sentencing Enhancement
10   - Failure to Communicate and Present Appeal Issues

11   Movant also asserts in various filings that he is entitled to leave to conduct formal discovery.

12          Respondent opposes, arguing that movant procedurally defaulted on his claims of

13   prosecutorial misconduct and trial errors because they should have been litigated on direct

14   appeal.  Respondent also argues that movant's ineffective assistance of counsel claims lack merit.

15   As to procedural default, movant argues:  (1) ineffective assistance of counsel constitutes cause

16   and prejudice; and (2) actual innocence excuses the default.

17          **A.    Ineffective Assistance of Counsel Claims**

18          The Sixth Amendment guarantees the effective assistance of counsel.  The United

19   States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

20   Strickland v. Washington, 466 U.S. 668 (1984).  First, movant must show that, considering all

21   the circumstances, counsel's performance fell below an objective standard of reasonableness.

22   See id. at 688.  To this end, movant must identify the acts or omissions that are alleged not to

23   have been the result of reasonable professional judgment.  See id. at 690.  The federal court must

24   then determine whether, in light of all the circumstances, the identified acts or omissions were

25   outside the wide range of professional competent assistance.  See id.  In making this

26   determination, however, there is a strong presumption "that counsel's conduct was within the

8

1   wide range of reasonable assistance, and that he exercised acceptable professional judgment in all

2   significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

3   Strickland, 466 U.S. at 689).

4           Second, movant must affirmatively prove prejudice.  See Strickland, 466 U.S. at

5   693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

6   unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A

7   reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.;

8   see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not

9   determine whether counsel's performance was deficient before examining the prejudice suffered

10  by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an

11  ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

12  followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at

13  697).

14          As set forth in the § 2255 motion, movant claims ineffective assistance of counsel

15  on the following bases:

16          "Pre Trial"          - Failure to obtain Medi-Cal "RADs"
                                 - Failure to obtain Medicare documents
17                               - Failure to retain experts

18          "At Trial"           - Failure to notice tampering of exhibits
                                 - Failure to obtain certification of custody of exhibits
19                               - Failure to research
                                 - Failure to create timeline
20                               - Failure to attack government evidence
                                 - Failure to present financial records
21
            "Simple Error"       - Failure to present ""mistakes" defense theory
22                               - Failure to obtain accomplice instruction
                                 - Failure to subpoena Martha Edwards
23

24  Movant was represented at trial by Mark Reichel and Victor Haltom.  Mr. Haltom also

25  represented movant on appeal.  Petitioner has stated that his "main issue" in this case is

26  ineffective assistance from Mr. Haltom (See Doc. 186, p. 1).

9

1    Before addressing these specific claims, the court  observes that the district judge

2  made a specific comment regarding defense counsel's assistance.  In particular, the district judge

3  stated:

4    Mr. Haltom has done everything he possibly can, in my opinion, to
   try and represent [movant] in a zealous and appropriate manner.  Quite

5    frankly, . . . you can't make a silk purse out of a sow's ear. . . .

6  The record reveals that, among numerous other efforts, defense counsel did the following on

7  movant's behalf:  (1) filed a pre-trial motion to dismiss, which resulted in a superceding

8  indictment charging a reduced total amount of loss; (2) filed motions for a new trial;

9  (3) presented 13 defense witnesses; (4) engaged in vigorous cross-examination of prosecution

10  witnesses; (5) appealed the court's ruling on amount of loss; (6) appealed the court's ruling on

11  exclusion of witness Hilda Robles; (7) secured an acquittal on the charge of witness tampering;

12  and (8) filed numerous sentencing memoranda.

13    1.    Failure to Obtain Medi-Cal "RADs"

14    The court has reviewed the § 2255 motion and the 60-page memorandum filed in

15  support thereof and agrees with respondent that any ". . . assertion that exculpatory RADs

16  [Remittance Advice Details] exist is vague and unsupported, and the documents are not

17  identified with any specificity."  As respondent notes, these documents would have been in

18  movant's possession because they were issued to movant while he conducted business.  Thus,

19  movant should be able to identify which RADs should have been, but were not, introduced by

20  counsel and how they would have affected the outcome of the trial.  Movant has failed to do so.

21    2.    Failure to Obtain Medicare Documents

22    Movant asserts that counsel failed to obtain Medicare claims documents and that

23  the prosecutor failed to turn over such documents.  The court agrees with respondent's argument

24  that the record belies this claim:

25    Petitioner's counsel filed a motion for discovery which attached as
   an exhibit a memorandum from the government's case agent stating that

26    electronic copies of Medicare and Medi-Cal claims were available.

Docket, #48, Ex. A.  In the reply in support of that motion, petitioner's counsel acknowledged that he had received, among other things an "electronic copy of Medicare and Medi-Cal claims."  Docket, #52 at 1.  Indeed, the discs containing this claim information were received into evidence as trial exhibits.  R.T. 325:16-326:17; Government's Exhibits 9, 10.

Movant has not identified any specific documents which should have been, but were not, introduced by counsel or withheld by the government.

   3.   Failure to Retain Experts

Movant alleges that counsel was ineffective for failing to obtain "Medicare and Medi-Cal dually eligible reimbursement" experts and accounting experts.  He asserts that counsel "lacked the education and experience necessary to make determinations without advice from experts."  As to an accounting expert, the record reflects that counsel did in fact seek such an expert to testify at an evidentiary hearing, but that the request was denied by the court.  The denial of the evidentiary hearing was upheld by the Ninth Circuit on direct appeal.  As to experts in "dually eligible reimbursements," movant does not state how such experts would have affected the trial.

   4.   Failure to Notice Tampering of Exhibits

In Ground Two of his § 2255 motion, movant claims that counsel was ineffective for "failing to notice that the prosecution's exhibits had been tampered with on several occasions."  It appears that this claim relates to movant's allegation at trial that two government exhibits – Exhibits 5 and 6 – were forgeries.  However, as respondent notes, movant testified that his signature was on both these documents.  While he denies that he altered these documents himself, movant has not produced any evidence to support his theory that they were altered by anyone else.  In addition, movant has not sustained his burden of showing that, in light of all the evidence presented at trial, the outcome would have been different even if counsel had "noticed" the alleged evidence tampering.  It is entirely possible (and perhaps probable) that, had this issue been raised in any greater detail by counsel, it would have been proved that movant himself

11

1  forged the documents.  Thus, to the extent counsel did not pursue this issue, the decision

2  represents a tactical choice and not deficient performance.

3          5.     Failure to Obtain Certification of Custody of Exhibits

4          Movant claims in his motion that counsel "failed to obtain certification of custody

5  of exhibits."  He does not, however, specify which exhibits were not accompanied by any

6  required certification.

7          6.     Failure to Research

8          Movant claims that counsel failed to research the "60-day law" and, generally,

9  failed to research appropriate law.  Assuming for the moment that counsel did in fact fail to

10  conduct some research, movant does not indicate how such research would have made a

11  difference to the outcome of the trial.  Further, the record (and in particular trial briefs submitted

12  by movant's counsel) reflects that counsel did in fact engage in lengthy and detailed research

13  sufficient to present the relevant issues to the court.  As with many of movant's other claims of

14  ineffective assistance of counsel, this claim is conclusory and vague.

15          7.     Failure to Create Timeline

16          Movant claims that prosecution witnesses would have been impeached if the dates

17  of various events had been shown on a timeline.  However, any timeline could not have changed

18  the underlying evidence, which the jury apparently chose not to see the way petitioner would

19  have liked.  To the extent counsel chose not to present the dates in a timeline chart, the decision

20  must be seen as a tactical one and not the result of ineffective assistance.

21          8.     Failure to Attack Government Evidence.

22          Movant claims that counsel failed to present or attack false evidence in

23  prosecution's Exhibit 11 'summaries' and a plethora of other false hearsay evidence presented by

24  the prosecution's witnesses."  As to Exhibit 11, the record reveals that, contrary to movant's

25  assertion, counsel did in fact challenge the evidence.  Specifically, the exhibit was presented by

26  way of testimony from government witness Jerry Hurst, who was vigorously cross-examined by

defense counsel specifically regarding Exhibit 11.  As to other allegedly "false hearsay

evidence," movant does not specify which evidence is false.

9.    Failure to Present Financial Records

Movant states that counsel failed to "present financial records."  As with many of

his other claims of ineffective assistance of counsel, the court agrees with respondent's analysis:

> . . . The petitioner fails to describe the records and does not explain
> how their presentation would have affected the outcome of his case.  He
> has not met his burden and this claim must be denied.

10.    Failure to Present "Mistakes" Defense Theory

Movant argues that counsel failed "to even consider a valid defense theory."

However, because the record demonstrates that counsel did in fact argue various defense theories

at trial, to the extent he did not argue any particular theory movant would liked to have had

argued, the decision represents a tactical choice by counsel and cannot serve as the basis for a

claim of ineffective assistance.

11.    Failure to Obtain Accomplice Instruction

Movant argues that counsel was ineffective for failing to obtain an instruction on

accomplice testimony.  However, as respondent notes, counsel did in fact try to have such an

instruction read to the jury, but the trial judge refused.  In particular, the defense's proposed jury

instructions 18, 19, and 20 related to accomplice testimony.

12.    Failure to Subpoena Martha Edwards

Movant claims that witness Martha Edwards was embezzling and that she should

have been subpoenaed by defense counsel.  However, as respondent notes, movant "provides

nothing to substantiate these allegations and never explains how her testimony would have

affected the outcome of his case."

///

///

///

1          **B.      Procedural Defaulted Claims**

2                  A claim may not be raised by way of a motion under 28 U.S.C. § 2255 if the claim

3    was not first presented on direct appeal and where the movant deliberately by-passed direct

4    appeal or violated a specific rule requiring a particular claim to be raised at a certain time.

5    See Bousley v. United States, 523 U.S. 614 (1998); English v. Untied States, 42 F.3d 473, 481

6    (9th Cir. 1994); United States v. McMullen, 98 F.3d 1155, 1157 (9th Cir. 1996).  If, however, the

7    movant can demonstrate cause and prejudice for the default or actual innocence the claim may be

8    heard.  See Bousley, 523 U.S. at 622.  Procedural default also does not apply to claims that could

9    not be presented on direct appeal because they required development of facts outside the record.

10   See Bousley, 614 U.S. at 621-22.  Thus, procedural default does not apply to claims of

11   ineffective assistance of counsel because such claims are properly raised in the first instance in a

12   § 2255 motion.  See United States v. Pirro, 104 F.3d 297, 299 (9th Cir. 1997).

13                 Movant did not raise any of the claims presented in his § 2255 motion on direct

14   appeal.  Therefore, the court agrees with respondent that all of movant's claims (except his

15   ineffective assistance of counsel claim) are subject to procedural default because they were not

16   raised on direct appeal.  To avoid the default, movant must demonstrate cause and prejudice or

17   actual innocence.  As to why he did not raise claims earlier, in his § 2255 motion movant states:

18                     Defendant was represented by counsel throughout the pre, post,
                   trial and appellate proceedings.  Defendant's counsel did not agree with
19                 the defendant that the issues were critical to the immediate case.  The
                   relationship between the defendant and counsel deteriorated ever since
20                 counsel said "ready for trial" and counsel lacked needed discovery and had
                   not retained Medicare/Medi-Cal Billing Experts.  Defendant could not
21                 afford to hire counsel independent from the court appointed counsel and
                   requests to the public Defender's office for substitution were verbally
22                 denied.

23                 As discussed above, the court finds no basis for concluding that counsel was

24   ineffective in any regard.  Therefore, ineffective assistance of counsel cannot provide cause and

25   prejudice to excuse movant's default of claims which could have been, but were not, raised on

26   direct appeal.  Turning to actual innocence, movant does not present anything to this court

                                                    14

1   beyond conclusory and unsubstantiated arguments that the government's evidence was false and

2   that he is not guilty of the crimes.  The court finds that movant's claims of prosecutorial

3   misconduct and trial court error are defaulted.

4

5                                   **III.  CONCLUSION**

6               Based on the foregoing, the undersigned recommends that:

7               1.        Movant's § 2255 motion (Doc. 194) be denied; and

8               2.        All other pending motions (Docs. 195, 213, and 219) be denied as moot.

9               These findings and recommendations are submitted to the United States District

10  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days

11  after being served with these findings and recommendations, any party may file written

12  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

13  Findings and Recommendations."  Failure to file objections within the specified time may waive

14  the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

15

16   DATED: April 4, 2008

17

18                                        **CRAIG M. KELLISON**
                                          UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26